UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL GARCIA,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>NUNO, et al.,<br><br>                                    Defendants. | Civil      3:14-CV-00243 BAS (BGS)<br>No.<br>**REPORT AND<br>RECOMMENDATION: GRANTING<br>IN PART AND DENYING IN PART<br>DEFENDANTS' MOTION TO<br>DISMISS**<br><br>**[Doc. No. 33]** |

This Report and Recommendation is submitted to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3.

## I.    INTRODUCTION

Plaintiff Israel Garcia ("Plaintiff"), is a litigant proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  [First Amended Complaint at 1, ECF No. 16 ("FAC").][1]  Plaintiff makes the following claims in his FAC: (1) Eighth Amendment deliberate indifference and Fourteenth Amendment due process violations against Officer Elmore [*Id.* at 2, 5-6]; (2) Eighth Amendment excessive force, Fourteenth Amendment due process, and First Amendment retaliation violations against

---

[1]Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

Officer Nuno [*Id.* at 2, 7-14]; (3) Fourteenth Amendment due process, Eighth Amendment deliberate indifference and First Amendment retaliation violations against registered nurses Manuel and Silva [*Id.* at 4, 7-17]; (4) Fourteenth Amendment due process violation against Lt. Beltran [*Id.* at 3, 13]; (5) Eighth Amendment deliberate indifference and First Amendment retaliation violations against Dr. Kornbluth [*Id.* at 3, 15]; (6) Eighth Amendment deliberate indifference violations against Dr. Ball; (7) Eighth Amendment deliberate indifference violations against Warden Montgomery [*Id.* at 2, 5-6, 8]; and (8) Fourteenth Amendment retaliation violations generally against correctional staff and medical staff. [*Id.* at 12.] Plaintiff further requests injunctive relief concerning medical unit operations. [*Id.* at 17.]

Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 23, 2015. [Mot. to Dismiss at 1, ECF No. 31 ("Mot.").] Plaintiff did not file an opposition or any other response to Defendants' Motion.[2] Defendants contend that Plaintiff's claims should be dismissed for several reasons. First, Defendants argue that Plaintiff's excessive force claim against Officer Nuno should be dismissed under the favorable termination doctrine. [*Id.* at 16.] Next, Defendants assert that Plaintiff's claims fail to satisfy the deliberate indifference standard because he does not allege specific injuries, he cannot bring a claim on behalf of another inmate, and he does not establish that any Defendant displayed deliberate indifference to his medical needs. [*Id.* at 16-26.]

Moreover, Defendants urge that Plaintiff's due process claims should be dismissed under the favorable termination doctrine, as well as for failure to allege a violation in specific proceedings, and because he received all the process he was due. [*Id.* at 16-26.] Finally, Defendants argue for dismissal of all of Plaintiff's First Amendment retaliation claims for failing to link the retaliation to a protected activity and because Plaintiff's claims are otherwise unsubstantiated. [*Id.*]

---

[2] Under Civil Local Rule 7.1.f.3.c if an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the court. The Court will, however, address the motion on its merits.

14cv00243-BAS (BGS)

For the reasons set forth below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** on all claims except the Eighth Amendment excessive force claim against Officer Nuno and the Eighth Amendment deliberate indifference claim against Dr. Kornbluth.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). A claim upon which the court can grant relief must have facial plausibility. *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc). The court's liberal interpretation of a pro se complaint however, may not supply essential elements of the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

///

## III.   DISCUSSION

The facts are taken from Plaintiff's FAC and are viewed in the light most favorable to Plaintiff.  Plaintiff attached nearly a hundred pages of documents to his complaint and when documents are attached to a complaint, the Court is not limited to the allegations contained in the complaint; rather the attached documents become part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts to support the claim.  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

### A.  Eighth Amendment Excessive Force Claim Against Officer Nuno

According to Plaintiff, on February 23, 2013, Officer Nuno confiscated hygiene items Plaintiff tried to slip under an inmate's door. [FAC at 9.] A discussion ensued over whether Nuno should return the hygiene items to Plaintiff. [*Id.*] Plaintiff could see that Officer Nuno was very mad, and accordingly, he stepped away from the officer, took off his glasses and put them in his front shirt pocket. [*Id.*]  When Plaintiff looked back up, Officer Nuno's elbow hit him on the left side of his face, making him fall. [*Id.* at 10.]  Plaintiff alleges he was on the floor with Officer Nuno on top of him and continuing to attack. [*Id.*]  Once other officers approached, Officer Nuno stopped his attack, and handcuffed Plaintiff without incident. [*Id.*]  Plaintiff received a medical evaluation on the day of the incident, and the report documents complaints of pain to the  right side of his chest. [FAC at 10.]  Later that day a doctor was called. [*Id.* at 11, 14.]  The doctor prescribed codeine #3 for pain, and a EKG was performed. [*Id.*]  Plaintiff received no further testing, although it was discovered about two months later after an X-ray and bone scan that he had fractured ribs in the healing process.[3]  [*Id.*]

### 1.   *Legal Standard*

When prison officials are accused of using excessive force on an inmate in violation of the Eighth Amendment, the relevant inquiry is whether the force was applied in a good

---

[3]The record does not establish whether Plaintiff broke his ribs as a result of the incident with Officer Nuno or at another time before or after the incident.

faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To succeed on an excessive force claim, plaintiff must establish that defendant unnecessarily and wantonly inflicted pain. *See Whitley*, 475 U.S. at 320; *see also Jeffers v. Gomez*, 267 F.3d 895, 900 (9th Cir. 2001). Under *Whitley*, the relevant factors in determining whether a use of force violated the Eighth Amendment are: (1) the need for use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff posed to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response. *Id.* at 21; *see also Hudson*, 503 U.S. at 7. "[T]he absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." *Jordan v. Gardner*, 986 F.2d 1521, 1528 n. 7 (1993). The Supreme Court has reiterated that the Eighth Amendment may be violated by the use of excessive force against a prison inmate "'[even] when the inmate does not suffer serious injury.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1176 (2010) (quoting *Hudson*, 503 U.S. at 4.) While the extent of an inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force...are only imperfectly correlated, and it is the latter that ultimately counts," *Wilkins*, 130 S. Ct. at 1178. At the same time:

> [N]ot "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."

*Id.*

**2.**   *Application to Plaintiff's Claim Against Officer Nuno*

At the outset, Defendants contend that a judgment in Plaintiff's favor on his excessive use of force claim would necessarily imply the invalidity of Plaintiff's prison disciplinary conviction stemming from the incident with Officer Nuno. Such a judgment would be in violation of the rule announced in *Heck v. Humphrey*, 513 U.S. 477 (1994).

In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on the direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 513 U.S. at 486-87 (footnotes omitted) (emphasis omitted). The holding in *Heck* applies in the context of prison disciplinary convictions where the loss of good time credits is assessed. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (claims for declaratory relief and money damages challenging prison disciplinary hearing procedures were *Heck*-barred because the nature of the allegations, if proven, would necessarily imply the invalidity of the result of the prison disciplinary hearing); *see also Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("*Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.").

It is not the case, however, that if a prisoner resists a correctional officer, the officer may use whatever amount of force he or she wishes to subdue the individual. *See Whitley*, 475 U.S. at 321.  Accordingly, an Eighth Amendment excessive force claim by a prisoner against a correctional officer is not necessarily fundamentally inconsistent with the validity of a prison disciplinary conviction for resisting staff that arises from the same incident. *See e.g., Hooper v. County of San Diego*, 639 F.3d 1127, 1133 (9th Cir. 2011) (excessive force claim not *Heck*-barred because "[a] holding in *Hooper's* § 1983 case that the use of the dog was excessive force would not 'negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of Hooper's attempt to resist it when she jerked her hand away from Deputy Terrell'") (internal brackets omitted); *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) ("Under *Heck*, Smith would be allowed to bring a § 1983 action, however, if the use of excessive force occurred subsequent to the conduct on which his conviction was

based."); *Smithart*, 79 F.3d at 952-53 (reversing the district court's dismissal of an excessive force action brought by an arrestee under the Fourth Amendment, because a successful result for the plaintiff would not necessarily imply the invalidity of the plaintiff's arrest or conviction for assault with a deadly weapon where the plaintiff maintained that the defendant arresting officers, used force far greater than required for his arrest and out of proportion to the threat which he posed); *see also Huey v. Stine*, 230 F.3d 226, 230 (6th Cir. 2000) ("In general, the federal courts hold that Eighth Amendment claims do not run afoul of *Heck* because the question of the degree of force used by a ... correctional officer is analytically distinct from the question whether the plaintiff violated the law."), abrogated on other grounds by *Muhammad v. Close*, 540 U.S. 749 (2000); *Shelton v. Chorley*, No. 1:07-CV-560-MHM, 2011 U.S. Dist. Lexis 35053 (E.D. Cal. Mar. 31, 2011) (finding that the prisoner plaintiff's excessive use of force claim against a correctional officer was not *Heck*-barred despite plaintiff's prison disciplinary conviction for battery on a peace officer because "it is possible that plaintiff attempted to batter defendant *and* that defendant used excessive force in subduing plaintiff.").

In this case, the factual context in which the force was used is disputed.  For purposes of the *Heck* analysis, it is possible that Plaintiff could prevail on his excessive force claim without necessarily implying the invalidity of his prison disciplinary conviction.  For instance, he could prove: (1) Officer Nuno responded to Plaintiff's resistance with an unjustified and excessive amount of force; or (2) Officer Nuno used excessive force before or after, instead of in response to Plaintiff's resistance.  In other words, while Plaintiff's version of the events contradicts the disciplinary hearing officer's finding that Plaintiff was guilty of resisting staff, which resulted in the use of force; Plaintiff's success on his excessive force claim does not *necessarily* invalidate the prison disciplinary finding that Plaintiff resisted staff.  Accordingly, the Court concludes that Plaintiff's excessive force claim is not *Heck*-barred.

Because Plaintiff's claim is not *Heck*-barred, Plaintiff may proceed on his excessive force claim so long as he alleges facts to show that Officer Nuno unnecessarily and

wantonly inflicted pain on him.  [FAC at 9]; *see Whitley*, 475 U.S. at 320.  Again, the relevant factors include: (1) the need for force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury inflicted; (4) the extent of the threat the officers reasonably perceived Plaintiff posed to staff and inmates; and (5) any efforts to temper the severity of a forceful response.  *Id.* at 321.

Plaintiff alleges that Officer Nuno and him had a dispute about whether the hygiene items Plaintiff attempted to give to another inmate should be returned to him. [FAC at 9.] Plaintiff claims Officer Nuno became upset, and while Plaintiff removed his glasses Officer Nuno used his elbow to hit Plaintiff on the left side of his face.  Plaintiff fell to the ground and Officer Nuno continued to attack him. [*Id.*] In contrast, the prison disciplinary proceedings indicate that Officer Nuno claims Plaintiff hit him in the chest after Plaintiff removed his glasses, which required Officer Nuno to take Plaintiff to the ground. [*Id.* at 7; Incident Report at 10, attached as an exhibit to FAC at 12 ECF 16-1.]  The RVR indicates that Plaintiff was found guilty of assaulting Officer Nuno and was assessed 150 days forfeiture of credits.  [RVR attached to exhibits to FAC at 16; ECF 16-1.]  Based on the discrepancy between Plaintiff's allegations and the documents, a factual dispute exists with respect to whether Officer Nuno's need for force and the amount of force used was reasonable in the circumstances.

Construing the pleadings in the light most favorable to Plaintiff, Plaintiff could prove facts in support of his claims which would entitle him to relief. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Accordingly, the Court recommends that Defendant Nuno's Motion to Dismiss Plaintiff's excessive force claim be denied.

**B. Eighth Amendment Deliberate Indifference Claims**

Plaintiff alleges an Eighth Amendment deliberate indifference claim against Officer Elmore for her failure to protect another inmate. (FAC at 5.)  He also alleges an Eighth Amendment deliberate indifference claim against Defendants Manuel and Silva for their role in his medical treatment, and an Eighth Amendment deliberate indifference claim against

Dr. Kornbluth for his role in delaying Plaintiff's receipt of medical treatments and testis removal surgery. (FAC at 14-15.)

The Fourth Circuit Court of Appeals has noted that "the standard of liability is the same" for assessing overlapping failure to protect claims, and deliberate indifference to serious medical needs claims, "and therefore independent analysis of each count is unnecessary." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) citing *Young v. City of Mount Rainer*, 238 F.3d 567, 575 (4th Cir. 2001). As explained in *Young*:

> [A failure to protect] claim is no different in any meaningful respect from the indifferent-to medical-needs claim and is governed by the same standard of deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (finding "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement'" and concluding that an inmate's failure-to-protect claim must be measured under the deliberate indifference standard); *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc) (noting "the absence of a constitutionally significant distinction between failure to protect claims and medical care claims"). We therefore conclude that [plaintiffs'] claims must be measured under a standard of deliberate indifference.

238 F.3d at 575.

"The Fourth Circuit's reliance on a common deliberate indifference analysis to assess factually similar claims alleging both a failure to protect and deliberate indifference to serious medical needs, is consistent with Ninth Circuit legal standards." *Manago v. William,* 2013 U.S. Dist. LEXIS 183734 (E.D. Cal. Mar. 13, 2013).

### 1. *Legal Standard: Failure to Protect Claim*

"A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 825, 847 (1994). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well being of the prisoner. *Id.* at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). To sustain a failure to protect claim on motion to dismiss, the inmate must demonstrate: (1) a deprivation that was objectively sufficiently serious resulting in the denial of "the minimal civilized measure of life's necessities," and (2) defendant knew of, and disregarded, an excessive risk to prisoner's safety. *Farmer*, 511 U.S. at 834, 837. It

is not enough to show a defendant should have known of the risk; actual notice on the part of the prison official is required to show deliberate indifference. *Id.* at 837-38 and 843 n.8. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* Before being required to take action, the official must have more than a "mere suspicion" that an attack upon an inmate will occur. *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir. 1986). "Deliberate indifference is a high legal standard." *Torguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004). *"*This is not an easy test to satisfy.*" *Hallet v. Morgan,* 296 F.3d 732, 744-45 (9th Cir. 2002).

### 2. *Application to Claim Against Officer Elmore*

On January 23, 2013, Plaintiff was admitted to the infirmary (also known as the Correctional Treatment Center or "CTC") for observation due to lower back pain. [FAC at 5; Exhibit A-1.] On February 18, 2013, Correctional Officer Elmore let Plaintiff, who is a general population ("GP") inmate, out for a shower with a Special Needs Yard ("SNY") inmate, and a fight ensued. [*Id.* at 5.] When Officer Elmore told the inmates to stop, they complied. [*Id.*] Elmore knew it was against protocol to let a SNY inmate and a GP inmate out at the same time because the SNY inmate must be protected at all times. [*Id.*] She told Plaintiff and the other inmate that they were to say nothing happened since she was the only person who had seen them fighting. [*Id.*] Officer Elmore allegedly tried to cover-up the incident by falsely preparing reports to avoid repercussions for failing to properly follow protocol. [*Id.*] Plaintiff claims Officer Elmore failed to provide protection for the SNY inmate and acted recklessly, amounting to Eighth Amendment deliberate indifference. [*Id.*]

Plaintiff's failure-to-protect claim against Officer Elmore fails to assert an Eighth Amendment violation. First, Plaintiff does not state a substantial deprivation as to his person, but rather asserts a claim on behalf of another inmate. Second*,* he does not state any facts sufficient to demonstrate that Officer Elmore had actual knowledge that a fight between the two inmates would ensue as a result of her actions. Finally, Plaintiff alleges no injuries. For these reasons, the undersigned recommends that Defendant Elmore's Motion

to Dismiss Plaintiff's deliberate indifference claim be granted.   The Court further recommends that Plaintiff not be permitted leave to amend this claim because amendment would be futile given the fact Plaintiff's allegations are not based on any harm he suffered, but rather on behalf of another inmate.

**3.**   *Legal Standard: Medical Care Claim*s

Where a prisoner's Eighth Amendment claims arise in the medical care context, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976).   An Eighth Amendment medical care claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v.. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).   A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104).   Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id.* at 1059-60.   By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer*, 511 U.S. at 834.

If a prisoner establishes the existence of a serious medical need, he must then show prison officials responded to the serious medical need with deliberate indifference. *Farmer*, 511 U.S. at 834.   In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).   Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial.   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th

Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); *McGuckin*, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. *Estelle*, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *McGuckin*, 974 F.2d at 1059; *Wood v. Housewright,* 900 F.2d 1332, 1335 (9th Cir. 1990); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  *See also McGuckin*, 974 F.2d at 1060.  "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the eighth amendment." *Estelle*, 429 U.S. at 106.  Medical malpractice is not a constitutional violation simply because the victim is a prisoner.  *Id.*

### 4.    *Plaintiff's Medical History*

Plaintiff's medical treatment history is extensive.  Plaintiff's records attached to his complaint establish he fell off of his bunk in or about November 2012 and began experiencing lower back pain and urinary incontinence. [FAC at 47, 51. ] Plaintiff was taking Tylenol #3 for pain. [*Id.* at 48.] On January 23, 2013, he received an X-ray and MRI of his lumbar spine to evaluate him for a neurologic problem. [*Id.*] The MRI revealed minimal degenerative disk disease but otherwise no abnormalities. [FAC at 47, 59.] He was discharged back to Calipatria State Prison that same day. [*Id.* at 52.]

On April 6, 2013 Plaintiff received a testicular ultrasound. [*Id*. at 62.] Dr. Noonan at Calipatria performed the ultrasound and discovered the left testis has decreased size and abnormal appearance. [*Id.*] No blood flow was detected to the left testis and Dr. Noonan

reported that Plaintiff had a history of injury to the left testis and the issue was "most likely chronic, Necrosis and atrophy." [*Id*.]

On May 16, 2013 Plaintiff was taken to Pioneer Memorial Hospital for back pain and rib pain and received a total body bone scan. [*Id*. at 46.] The scan revealed no abnormalities except for evidence of a healing fracture involving two mid right anterior ribs. [FAC at 46.] On June 11, 2013, Plaintiff had a neurology follow-up via telemedicine. [FAC at 38.] His chief complaint was coccyx pain and he reported urinary leaking. [*Id*.] On June 20, 2013, Plaintiff filed a health care appeal to see a testicular specialist due to his pain. [FAC at 16-2, 84.]

Plaintiff made health care appeal complaints about his need for a urology referral, more pain pills, and to see pain specialists in June 2013 and November 2013. [*Id*. at 78.] His November 10, 2013 health care appeal complains that his last visit to the hospital for an MRI and testicle evaluation was canceled (presumably by Dr. Kornbluth) and the doctor (also presumably Dr. Kornbluth) was not giving him proper pain medication because Tylenol did not work and psychological medications were not adequate. He alleged deliberate indifference for not being provided the pain medication he wanted. [*Id*. at 90.] Plaintiff received a response to his appeals on January 16, 2014, which reflected Plaintiff's extensive medical care throughout 2013 and concluded that Plaintiff was on pain medication, but that Plaintiff's desire for "no pain" is not a reasonable goal due to side effects. [Id. at 16-2, 79.] The Chief Medical Executive explained the "goal should be to achieve a level of pain control that allows you to function in your activities of daily living." [*Id*.] Plaintiff's health care appeals largely stem from: him disagreeing with telemedicine appointments, not getting to dictate his choice in pain medication, him wanting to see a specialist regarding his testicular pain. [*Id*. at 16-2, 78-79.] On February 19, 2014, Plaintiff's health care appeal states Dr. Kornbluth violated his Constitutional rights by taking him off the list to see a back specialist and violated his rights by only prescribing him Tylenol for his pain. [*Id*. at 92.]

On April 1, 2014 Plaintiff was evaluated by a urologist and recommended for surgery.

13

[*Id.* at 16-1, 42.] Subsequently, Plaintiff's primary care physician wrote a referral for surgery. On April 4, 2014, Plaintiff was evaluated by a neurologist regarding back pain. Recommendations for nerve connection velocity test, electromyogram and physical therapy were made, but the specialist also considered malingering or another functional disorder could cause the symptoms. [*Id.* at 31.] The primary care physician made referrals and these services were approved. On April 15, 2014, Plaintiff was evaluated by his primary care physician to discuss his conditions and plan of care. [*Id.*]

Plaintiff filed health care appeal on May 9, 2014 regarding his dissatisfaction about a neurology telemedicine appointment, as well as pain in his right testicle. [*Id.* at 85.]

i.  *Analysis of Medical Care Claims*

a.  *Claims Against Registered Nurses Manuel and Silva*

On February 23, 2013, while Plaintiff was in the holding cell following the attack by Officer Nuno, RN Silva said she did not see any injuries. [*Id.* at 9.] Plaintiff advised RN Silva that he had severe pain in his lower back and on the right side of his chest, but RN Silva walked away. [*Id.* at 14.] Several minutes prior to the nurses' follow-up examination, Officer Badilla took numerous photographs of Plaintiff's body. [*Id.*] Plaintiff claims pictures depict him in a lot of pain. [*Id.*] When Plaintiff was put back in his cell, he pushed the call button and RNs Silva and Manuel came. [*Id.* at 11, 14.] Plaintiff complained about right-side chest pain. [*Id.* at 11.] Plaintiff further advised RN Silva and RN Manuel that the pain in his side increased when he tried to take a deep breath. [*Id.* at 14.] An EKG was done with negative results. [*Id.* at 11.] A doctor was contacted, advised of Plaintiff's pain and complaints, and prescribed codeine #3 for pain, but only for one day. [*Id.* at 14.] Because the nurses' did not diagnose a injury, Plaintiff was refused any further tests, X-rays, MRI, bone scan, or other treatment. [*Id.*]

The February 23, 2013 medical records indicate Plaintiff complained of pain to his right side. [*Id.*] An MRI done before the February 23, 2013 incident with Officer Nuno showed there was nothing wrong with Plaintiff's ribs. [*Id.*] After Plaintiff filed a grievance regarding his pain, a bone scan done on May 16, 2013 showed two broken ribs. [*Id.* at 11,

14.] Plaintiff claims that if he received adequate treatment on February 23, 2013, he would have been diagnosed with broken ribs sooner. [*Id.* at 14.]  Plaintiff alleges that due to the nurses' negligent medical observation and deliberate indifference, Plaintiff was forced to endure extreme pain for several months without medication. [*Id.*]

Plaintiff objectively establishes the existence of a serious medical need through his expression of the pain he experienced in his right chest, his breathing concerns and later discovery of two fractured ribs.  Plaintiff fails, however, to provide enough evidence to establish RN Manuel and RN Silva denied, delayed or intentionally interfered with his medical treatment.  Plaintiff does not explain how the nurses' diagnosis, or lack thereof, amounted to more than at most, negligence.  Moreover, Plaintiff was treated by a doctor and given an EKG the same day of the attack.  Even though Plaintiff alleges RN Silva stated she "saw" no injury and his demeanor evidenced he was in pain, he does not provide any facts to suggest that the nurses' state of mind rose to a level of deliberate indifference.  There are, therefore, no facts from which the Court can draw the reasonable inference that Defendants Manuel and Silva perceived a risk to Plaintiff and were deliberately indifferent to that risk.  In fact, the Manuel and Silva ensured Plaintiff received an EKG to evaluate his chest pain complaints.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claims of deliberate indifference against RNs Manuel and Silva should be granted without prejudice and with leave to amend in order for Plaintiff to allege facts sufficient to cure the deficiencies noted above.

### b. *Claim Against Dr. Kornbluth*

Plaintiff alleges Dr. Kornbluth told him, "we have spent a lot of money on you, so if you have thousands to spend then get your medical issue taken care of upon your release." [*Id.* at 15.]  He further alleges that Dr. Kornbluth took him off a specialist visit list, delayed his surgery and refused to give him pain medication. [*Id.* at 3.]  Plaintiff had to go one year before he got his testis removal surgery—and only received the surgery after his family helped and he filed another grievance. [*Id.*] He claims the specialist he had requested for

months ultimately found he had nerve and muscle damage to his left ankle and leg. [*Id.*] Plaintiff also indicates he filed a 602 grievance for pain medication on February 26, 2014, which was denied by Dr. Kornbluth in violation of his rights. [*Id.* at 16.]

Plaintiff's testis removal surgery and discovery of nerve and muscle damage objectively establish the existence of serious medical needs. Plaintiff, therefore, adequately details his severe pain, incontinence, and testicular atrophy. Plaintiff also details how he utilized the prison's inmate appeals process in an attempt to seek pain relief and attention for his various medical issues, including requests and approval for specialists visits and surgery. It is only, however, Plaintiff's recital of Dr. Kornbluth's alleged comments about too much money being spent on Plaintiff and the claim that Dr. Kornbluth intentionally removed Plaintiff from the list permitting him to visit specialists that sufficiently state a claim for deliberate indifference.

As such, when the facts are viewed in the light most favorable to Plaintiff, Plaintiff alleges sufficient facts to support the claim that Dr. Kornbluth knowingly disregarded a substantial risk to his health by intentionally denying and delaying his medical treatment. *See Tyler v. Smith*, 458 Fed. Appx. 597, 598 (9th Cir. 2011) (reversing district court's decision to dismiss action alleging deliberate indifference relating to a claim regarding delays in orthopedic treatment because the facts alleged show that as a result of filing grievances and having appointments with defendant, defendant was aware of plaintiff's pain and mobility problems, but delayed in referring plaintiff to a specialist). Accordingly, the Court recommends that the motion to dismiss Plaintiff's claim against Dr. Kornbluth for deliberate indifference be denied.

**C. Fourteenth Amendment Due Process Claims**

Plaintiff alleges a due process claim against Officer Elmore for not preparing a report documenting his attack of another inmate. [FAC at 5.] He also alleges due process violations against Defendants Nuno, Manuel and Silva for preparing false reports regarding his February 23, 2013 incident with Nuno. [*Id.* at 7-12.] Lastly, Plaintiff asserts a due process claim against Lt. Beltran with respect to Plaintiff's disciplinary hearing relating to the Nuno

incident. [*Id*. at 8.]

1.   *Legal Standard*

The Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without due process of law.  The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake.  *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving the state's deprivation of an individual's liberty, but only when there is a cognizable liberty interest at stake).  Protectable liberty interests arise from the Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right.  *Meachum v. Fano*, 427 U.S. 215, 224-27 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974) (describing minimum safeguards before a state, for disciplinary reasons, seeks to withdraw sentence credits a prisoner has already acquired); *Smith v. Sumner*, 994 F.2d 1401, 1405-06 (9th Cir. 1993).  A plaintiff who fails to allege specific proceedings in which his due process rights were violated does not state a claim. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

2.   *Application to Claim Against Elmore*

Defendant Elmore contends that Plaintiff's allegations do not state a due process claim against her because even if she did attempt to cover-up a fight between Plaintiff and the SNY inmate, Plaintiff was not denied any process he was due.  [Mot. to Dismiss at 17.] Defendant rightfully argues that Plaintiff's claim against her has no merit. [*Id*.] Indeed, Plaintiff does not allege a proceeding where he would have been due any process because he was never disciplined for the fight.  Under no circumstances does the situation Plaintiff alleges suggest, "a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta,* 539 U.S. 126, 136-37 (2003).  Therefore, the Court finds that Plaintiff fails to allege the type of "atypical and significant hardship" necessary to support a cognizable due process interest protected by the Fourteenth Amendment or created by state law. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1093-94 (9th Cir 1986)

(addressing liberty interests under the due process clause when in prison).  Accordingly, Defendant Elmore's motion to dismiss Plaintiff's due process claim should be granted. Because Plaintiff cannot allege a proceeding where he was denied due process with respect to the above, Plaintiff should not be allowed leave to amend this claim.

### 4.   *Application to Claims Against Officer Nuno, RN Manuel, and RN Silva*

At the outset, Defendants argue that Plaintiff's due process claims against Officer Nuno, RN Manuel, RN Silva and Lt. Beltran are *Heck*-barred.  [Mot. to Dis. at 18-20.]  As addressed earlier with respect to *Heck* and the excessive force claim, the relevant question is whether a finding for Plaintiff on his due process claims would necessarily imply the invalidity of his disciplinary conviction and the accompanying loss of time credits he received as a result of his conviction.  *Heck*, 512 U.S. at 486-87.  Plaintiff's due process claim alleges Officer Nuno prepared false reports identifying himself as the victim, and that Officer Nuno's false reports resulted in Plaintiff being found guilty of battering Officer Nuno and spending over a year in administrative segregation.  [FAC at 7, 13.]  Plaintiff also alleges RN Manuel falsely reported she saw Plaintiff hit Officer Nuno, and that on the February 23, 2013 Medical Report of Injury 7219, RNs Manuel and Silva falsely stated Plaintiff had no injuries.  [*Id.* at 7, 10, 14.]

Because an outcome in Plaintiff's favor on the above claims would necessarily negate the disciplinary decision finding Plaintiff guilty of battering Officer Nuno, this Court recommends that these claims be dismissed as *Heck*-barred.  The Court further recommends that Plaintiff not be granted leave to amend on the claims because the favorable termination doctrine would render any amendment on these claims futile.

### 5.   *Application to Claim Against Lt. Beltran*

Lt. Beltran is the California Department of Corrections and Rehabilitation official who conducted Plaintiff's Rules Violation Report ("RVR") hearing.  [*Id.* at 13.]  Plaintiff contends Lt. Beltran did not let him present a defense or evidence.  [*Id.* at 11, 13.]  Instead, Lt. Beltran simply stated that he had to find Plaintiff guilty due to the pending referral to the District Attorney for prosecution and he would let the court deal with the charge against

Plaintiff. [*Id.*] Plaintiff claims Lt. Beltran found him guilty of the offense and told him to "get out." [*Id.*] Plaintiff appears to claim a due process violation against Lt. Beltran due to his failure to properly review Plaintiff's evidence and to foreclose Plaintiff from presenting his defense. [*Id.* at 11, 13.]

This claim is also barred by the favorable termination doctrine. *Edwards v. Balisok,* 520 U.S. 641, 643–48 (1997). Plaintiff was convicted in prison disciplinary proceedings of battery on Officer Nuno. As a result of the conviction, he lost good-time credits. His claim is the same as the claim made in *Edwards*: that he was denied the opportunity to put on a defense and present exculpatory evidence. *See Edwards,* 520 U.S. at 646. Like in *Edwards*, Plaintiff's claim for damages based on allegations the Lt. Beltran was biased and did not afford him due process would necessarily imply the invalidity of the punishment imposed in the disciplinary proceedings and is therefore not cognizable under section 1983. *Id.* at 648. As such, the motion to dismiss should be granted and leave to amend be denied because amendment would be futile under the circumstances.

**D. Supervisory Liability Claims**

Plaintiff contends Dr. Ball and Warden Montgomery had responsibility to oversee the employees and properly train them. [FAC at 8.] He contends the failure to supervise and train the officers led to the incident with Officer Nuno and his injury. [*Id.*]

   1. *Legal Standard*

Supervisory liability may be imposed in an individual capacity only when the supervisor participated in or directed the violations, or knew of the subordinate's violations and failed to act to prevent them. *Corales v. Bennet*, 567 F.3d 554, 570 (9th Cir. 2009).

> "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability. A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted).

> "[A]lthough there is no pure respondeat superior liability under § 1983, a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violation [of subordinates] and failed to act to prevent them.'"

*Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007), quoting *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).  For instance, officials can be held liable for their failure to implement a proper mental health care program or failure to adequately train or supervise subordinates.  *Greason v. Kemp,* 891 F.2d 829, 836-37 (11th Cir. 1990).  In addition, a supervisor who is informed of an alleged Eighth Amendment violation, e.g. pursuant to review in an inmate's administrative grievance, may be liable if he or she failed to remedy the violation.  *Penner*, 439 F.3d at 1097-98.

2.   *Analysis of Claims Against Dr. Ball and Warden Montgomery*

Plaintiff alleges Warden Montgomery and Dr. Ball are responsible for ensuring that employees are properly trained and that the lack of proper training caused his injuries. [FAC 5-6, 8.]  Next, Plaintiff alleges that it is the Warden's and Dr. Ball's responsibility to ensure that everyone in their care is safe when receiving medical treatment.  [*Id.* at 14.] Plaintiff further contends that the lack of monitoring cameras in the infirmary contributed to his injury suffered after the incident with Nuno in the infirmary.  [*Id.* at 8, 14.]

Plaintiff, however, fails to state a claim against Warden Montgomery and Dr. Ball under a theory of supervisory liability because he has not alleged facts that would support a claim that these defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or 'implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Furthermore, Plaintiff has failed to provide facts indicating that either Dr. Ball or Warden Montgomery was personally involved in a Eighth Amendment violation against him.  Accordingly, Defendants' motion to dismiss Plaintiff's claims alleging Warden Montgomery and Dr. Ball acted with deliberate indifference through their supervisory liability should be granted.  Plaintiff should be allowed leave to amend to cure the deficiencies noted above.

///

///

**E. First Amendment Retaliation Claims**

Plaintiff vaguely, and in conclusory fashion, alleges First Amendment retaliation claims against Silva, Nuno, Manuel, Kornbluth and unnamed and unspecified staff. [FAC at 7.]

**1.**   *Legal Standard*

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Although retaliation is not expressly referred to in the Constitution, it is actionable because retaliatory actions may chill the exercise of constitutional rights. *Perry v. Sinderman*, 408 U.S. 593 (1972).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against, an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  To show that the adverse action was taken because of protected conduct, a plaintiff must offer facts linking the alleged retaliation to the exercise of a constitutional right.  *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  A prisoner must also establish that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts.  *Mt. Healthy City Bd. of Ed.*, 429 U.S. at 285-86.  Retaliatory motive may be inferred, however, from the timing and nature of the alleged retaliatory activities.  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314-16 (9th Cir. 1989).

The Ninth Circuit has held that preserving institutional order, discipline and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation.  *Barnett*, 31 F.3d at 816; *Rizzo v. Dawson* 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions on first amendment rights must be analyzed in terms of the legitimate policies and goals of the

correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners.")  The burden is on Plaintiff to demonstrate that legitimate correctional purposes did not motivate prison officials' actions.  *Pratt*, 65 F.3d at 808.

**2.**   *Application to Claim Against RN Silva*

After Plaintiff had his left testicle removed around April 2014, RN Silva was disrespectful and unprofessional when she said in public that Plaintiff's sex was now "unknown." [*Id.* at 15; Exhibit C at 42.]  Plaintiff was shocked and embarrassed.  [*Id.*]  RN Silva laughed.  [*Id.*]  She said, "well didn't you just have it cut off"?  [*Id.*]  Plaintiff claims a First Amendment retaliation violation against RN Silva for making disrespectful comments about Plaintiff's medical issues.  [*Id.* at 12.]  Plaintiff does not specify engagement in any protected conduct that led to retaliation by RN Silva, nor any facts that his engagement in protected conduct was a substantial or motivating factor in the allegedly retaliatory conduct.   *Pratt*, 65 F.3d at 807; *Mt. Healthy City Bd. of Ed.*, 429 U.S. at 285-86.  Plaintiff also fails to state how the exercise of his First Amendment rights was chilled due to RN Silva's rude comments.  *Rhodes*, 408 F.3d at 567-68.

Accordingly, Plaintiff fails to state a retaliation claim and the Court recommends that the motion to dismiss the retaliation claim against RN Silva be granted.  Plaintiff, however, should be permitted leave to amend to allege facts sufficient to cure the noted deficiencies in the claim—mainly to allege engagement in protected activity, how engagement in that activity was a substantial or motivating factor in Silva's retaliatory actions, and how Plaintiff was chilled in the exercise of his First Amendment rights by Silva's actions.

**3**.   *Application to Officer Nuno and RN Manuel*

Plaintiff alleges that prior to being attacked by Officer Nuno on February 23, 2013, Plaintiff heard Sgt. Mejia, RN Manuel, and Officer Nuno talking about the incident that occurred five days earlier where Plaintiff was involved in a fight with an SNY inmate. [FAC at 9.]  Defendants contend Plaintiff fails to state a retaliation claim

because fighting is not protected conduct.  [Mot. to Dismiss at 22.]  This Court agrees. Plaintiff's inference that Defendants Nuno and Manuel must have retaliated against him due to his fight with the SNY inmate fails to state a claim because Plaintiff has not alleged the existence of a core element: engagement in a protected activity.  Without stating facts indicating Plaintiff was engaging in protected conduct, he cannot state a retaliation cause of action.  *Pratt*, 65 F.3d at 807.  He also fails to state facts to indicate that his engagement in protected conduct was a substantial or motivating factor in the retaliatory conduct.  *Mt. Healthy City Bd. of Ed.*, 429 U.S. at 285-86.  Finally, Plaintiff fails to state facts to show how the officers conversation was retaliatory conduct.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claims against Officer Nuno and RN Manuel should be granted.  Plaintiff should not be allowed leave to amend because fighting is not protected conduct and cannot give rise to a cognizable retaliation claim.

**4.**      *Application to Dr. Kornbluth*

Plaintiff also alleges Dr. Kornbluth told him, "we have spent a lot of money on you, so if you have thousands to spend then get your medical issue taken care upon your release;" and took him off a specialist visit list, delayed his surgery for testis removal and refused to give him pain medication.  [*Id.* at 3.]

Again, Plaintiff has failed to allege that Dr. Kornbluth's actions were made in response to Plaintiff engaging in a protected activity.  Moreover, the facts Plaintiff presents with respect to Dr. Kornbluth's comments are more appropriately considered under the deliberate indifference to medical needs rubric, which Plaintiff alleged and the Court reviewed above.  Accordingly, Defendants Motion to Dismiss Plaintiff's First Amendment retaliation claim against Dr. Kornbluth should be granted without leave to amend because these allegations will proceed under the deliberate indifference to medical needs claim.

**5.**      *Claims against unnamed correctional and medical staff*

Plaintiff allegedly experienced many problems with correctional staff and medical

14cv00243-BAS (BGS)

staff and alleges First Amendment retaliation claims for his use of the grievance system. [*Id.* at 6.] Specifically, Plaintiff alleges that on March 1, 2013, he was discharged from the infirmary and sent to administrative segregation without his lock-up order. [*Id.* at 11.] An unnamed supervisor took Plaintiff out of the infirmary even though his medical issues had not changed, then tried to bring him back after noticing it was wrong to have Plaintiff around other inmates while he wore diapers. [*Id.* at 6.] He also claims that at times medical staff would joke about his urinary incontinence, making others laugh, and gave Plaintiff pads instead of diapers. [*Id.*] Plaintiff also generally alleges a First Amendment retaliation claim against custody staff. [FAC at 11-12.] He alleges custody staff lost his property in retaliation for him filing grievances. [*Id.*]

Plaintiff's claims fail because he has not accused a particular person of mishandling his property, or how his grievance filings were the substantial and motivating factor for the unnamed infirmary worker's decision to release him while needing diapers. Most significant, Plaintiff fails to state how these broad statements of retaliation chilled him from exercising his First Amendment rights.

Thus, these general retaliation claims should be dismissed for: 1) failing to name specific defendants, 2) failing to identify specific retaliatory actions by the unnamed defendants, 3) failure to state facts indicating the retaliatory actions were substantially motivated by Plaintiff's engagement in protected activity, and 4) failing to state how he was chilled from exercising his First Amendment rights. Leave to amend should be allowed in order for Plaintiff to cure these deficiencies.

**F. Injunctive Relief**

Plaintiff included a claim for injunctive relief from the conditions of confinement in the infirmary at Calpatria State Prison. The claim is moot not only because prior to filing this complaint Plaintiff was transferred to R.J. Donovan State Prison, but also because Plaintiff is no longer incarcerated. *Dilley v. Gunn*, 64 F.3d 1365, 1368–69 (9th Cir.1995) ("An inmate's release from prison while his claims are pending will generally moot any claims for injunctive relief relating to the prison's policies unless the suit has

14cv00243-BAS (BGS)

been certified as a class action."); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991) (per curiam); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Thus, the claim for injunctive relief should be dismissed as moot.

**G. Official Capacity Claims**

Plaintiff also made claims for damages against all named defendants in both their individual and official capacities.  State officials sued for damages within their "official capacities" are not "persons" within the meaning of section 1983. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir.1997). Suits against state officials in their official capacities are "no different than suits against the state itself, and the Eleventh Amendment bars such suits." *Shilling v. Crawford*, 377 Fed. Appx. 702, 705 (9th Cir. 2010).  Plaintiff has made no allegation that Defendants acted pursuant to a policy or custom of constitutional deprivation.  *See Redman v. County of San Diego,* 942 F2d 1435, 1443-44 (9th Cir. 1991).  Accordingly all claims against Defendants in their official capacities should be dismissed without leave to amend because amendment would be futile.

**V. CONCLUSION**

Having reviewed the matter, the undersigned Magistrate Judge recommends that Defendant's Motion to Dismiss be **GRANTED** as to all claims except Plaintiff's Eighth Amendment excessive force claim against Officer Nuno, and Eighth Amendment deliberate indifference claim against Dr. Kornbluth.  Furthermore, the Court recommends Plaintiff be given leave to amend where noted to allow Plaintiff an opportunity to cure the deficiencies identified in the complaint for claims where amendment would not be futile.

**IT IS HEREBY ORDERED** that no later than **September 4, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 14, 2015**.

Defendant must also serve this REPORT and RECOMMENDATION on Plaintiff at his last known address and file the Proof of Service with the Court.

Dated: August 17, 2015

BERNARD G. SKOMAL
U.S. MAGISTRATE JUDGE

26

14cv00243-BAS (BGS)